IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal No. |
| ) | |
| v. ) | (18 U.S.C. §§ 1343, 1349 and 1956(h)) |
| ) | |
| TREVAUGHN J. YEARWOOD, ) | **[UNDER SEAL]** |
| a/k/a "Larry Wood" ) | |
| ▮▮▮▮▮▮▮▮▮▮▮ ) | |
| ▮▮▮▮▮▮▮▮ ) | |

**INDICTMENT**

**COUNT ONE**

The grand jury charges:

THE CONSPIRACY AND ITS OBJECTS

1. From beginning in and around January 2024, and continuing thereafter until in and around August 2025, in the Western District of Pennsylvania and elsewhere, the defendants, TREVAUGHN J. YEARWOOD, a/k/a "Larry Wood," and ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ and a person known to the grand jury as "▮▮▮▮▮" together, and with others both known and unknown to the grand jury (hereafter, conspirators), knowingly and voluntarily combined, conspired, confederated, and agreed to commit the crime of wire fraud, in violation of Title 18, United States Code, Section 1343.

OBJECT OF THE CONSPIRACY

2. It was the object of the conspiracy that the defendants, TREVAUGHN J. YEARWOOD, a/k/a "Larry Wood" (hereafter, YEARWOOD), and ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and their conspirators deceived elderly adults (hereafter, victims) in a scam commonly known as a "phantom hacker" or "tech support" scam in which fraudsters impersonated technical support representatives from electronic payment processing companies

and personnel from law enforcement agencies to defraud the victims of money.

## MANNER AND MEANS OF THE CONSPIRACY

3. It was a part of the conspiracy that ▬ and conspirators caused unsolicited emails or browser "pop-up" alerts to be sent to victims which purported to originate from software companies, law enforcement, and other sources.

4. It was further a part of the conspiracy that the emails and pop-ups contained deceptive statements which alerted a victim to a purported problem that required immediate attention, such as a "hack" of the victim's computer network, a system error, or an unauthorized payment, and instructed the victim to contact a person at a provided telephone number to resolve the problem.

5. It was further a part of the conspiracy that when contacted by victims, conspirators attempted to gain the trust of the victims and represented that they could resolve the purported problem after receiving cash payments from the victims, generally between $10,000 to $50,000.

6. It was further a part of the conspiracy that ▬ and conspirators instructed victims to make substantial withdrawals of cash from their personal bank accounts and to provide the money to a person who would arrive the same day or the next day, at a specific time, to pick up the cash at the victims' homes.

7. It was further a part of the conspiracy that ▬ and conspirators recruited and paid couriers to drive to victims' homes to pick up cash from the victims.

8. It was further a part of the conspiracy that ▬ recruited YEARWOOD who agreed to perform pickups of cash from victims.

9. It was further a part of the conspiracy that ▬, ▬ and

YEARWOOD used aliases to communicate with each other on WhatsApp, an encrypted messaging service that transmitted messages as signals in interstate commerce.

10. It was further a part of the conspiracy that ▮ and conspirators instructed couriers such as YEARWOOD to rent cars to travel to victims' residences to pick up the cash.

11. It was further a part of the conspiracy that ▮ instructed YEARWOOD to text him photographs of his route while driving to victims' homes, and to notify ▮ when he was near the destinations.

12. It was further a part of the conspiracy that ▮ and conspirators instructed the couriers to use alias names to identify themselves when picking up cash from victims.

13. It was further a part of the conspiracy that ▮ and ▮ instructed YEARWOOD that after collecting the cash from victims, to count the cash, and to text photographs of the cash to "▮ before leaving the victims' residences.

14. It was further a part of the conspiracy that after picking up cash from a victim, ▮ and conspirators instructed YEARWOOD to drive to a location in Vienna, Virginia, and to deliver the cash to an "Indian man" who would identify himself by giving YEARWOOD an "Indian dollar," who was ▮.

15. It was further a part of the conspiracy that between December 2024 and February 2025, at the direction of ▮ and ▮ YEARWOOD traveled to locations in multiple states to pick up cash from victims, such as: Shepherdstown, WV; Smyrna, DE; Stephens City, VA; Sunbury, NC; Woodstock, VA; Silver Spring, MD; Crozet, VA; Titusville, PA; Chesapeake, VA; Winchester, VA; Pittsburgh, PA; Martinsburg, WV; Vienna, VA; Dublin, VA; Mt. Lebanon, PA; Henrico, VA; Washington, D.C.; and Clearfield, PA, among other locations, and where he collected a total of approximately $737,900 in cash, which YEARWOOD then

delivered to ▓▓▓ in Vienna, VA.

   16. It was further a part of the conspiracy that in addition to YEARWOOD, conspirators recruited other "money mules" or "couriers" to collect victims' cash from locations throughout the United States, including victims in California, Georgia, Indiana, Maryland, and Oklahoma.

   In violation of Title 18, United States Code, Section 1349.

**COUNTS TWO THROUGH FIVE**

The grand jury further charges:

17. The government incorporates by reference paragraphs 2 through 16 of this Indictment as though set forth herein.

18. On or about the dates set forth below, in the Western District of Pennsylvania and elsewhere, the defendant, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (hereafter, ▇▇▇▇ for the purpose of executing and attempting to execute the scheme and artifice to defraud, that is to obtain funds from victims by means of material false and fraudulent pretenses, representations, and promises, did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communications, certain signs, signals and sounds, that is, ▇▇▇▇ did transmit and cause to be transmitted electronic signals, specifically, communications through the encrypted messaging service known as WhatsApp, to YEARWOOD which contained specific information regarding the identities, locations and quantities of cash to be collected from victims, each such transmission being a separate count herein:

| Count | Date | Redacted Message Contents |
|---|---|---|
| 2 | 2/10/2025 | " XXX C.C. Drive Pgh. PA" |
| 3 | 2/11/2025 | "J.D.C Age-82 male dressup long sleeve<br>Blue shirt, grey corduroy, white socks with grey Sandals" |
| 4 | 2/18/2025 | "XXXX V.D. Clearfield, PA" |
| 5 | 2/19/2025 | "name-A.N. Gener-female<br>Security code – 4268<br>Amount - $30,000" |

In violation of Title 18, United States Code, Section 1343.

## COUNT SIX

The grand jury further charges:

19. The government incorporates by reference paragraphs 2 through 16 of this Indictment as though set forth fully herein.

20. Beginning in and around January 2024, and continuing thereafter until in and around August 2025, in the Western District of Pennsylvania and elsewhere, the defendant, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), and a conspirator known to the grand jury as ▮▮▮▮▮ along with others both known and unknown to the grand jury (hereafter, conspirators) did agree with each other to commit offenses against the United States, to wit:

   a. to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of wire fraud, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

   b. to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument or funds involving the proceeds of specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, from a place in the United States to or through a place

        outside the United States, knowing that the funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i); and

    c.    to knowingly engage in and attempt to engage in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1957(a).

### MANNER AND MEANS OF THE CONSPIRACY

21. It was the object of the money laundering conspiracy that ▮▮▮▮, ▮▮▮▮▮▮ and other conspirators both known and unknown to the grand jury agreed to defraud victims by transmitting fraudulent electronic messages to victims as described in Count One of this Indictment.

22. It was further a part of the conspiracy that conspirators instructed victims to deposit thousands of dollars of U.S. currency into Coinhub ATMs located in the Western District of Pennsylvania and elsewhere, which currency was converted into cryptocurrency, which further concealed the source and location of victim deposits.

23. It was further a part of the conspiracy that on February 10 and 11, 2025,

conspirators instructed a victim known to the grand jury as J.C., to deposit approximately $44,500 into Coinhub ATMs located on Curry Road and Brownsville Road in the Western District of Pennsylvania.

24. It was further a part of the conspiracy that on November 29, 2024, money laundering conspirators instructed a victim known to the grand jury as B.R. to deposit approximately $12,000 into a Bitcoin Depot ATM located on North Dupont Highway in Dover, Delaware.

25. It was further a part of the conspiracy that in September 2024, January 2025, and February 2025, ▇▇▇ and conspirators opened seven Truist Bank business accounts in Vienna, Virginia, with a stated business purpose as "import/export" companies, which they named "Sunshine Commodity Trading LLC" (hereafter, SCT), "Modest Trading LLC" (hereafter, MT), or Worldwide Consulting LLC" (hereafter, WC), into which conspirators deposited millions of dollars in funds stolen from victims.

26. It was further a part of the conspiracy that ▇▇▇ and conspirators instructed other conspirators to wire victims' funds into the SCT, MT, and WC bank accounts, where ▇▇▇ and conspirators transferred victim funds between and among the accounts, or internationally.

27. It was further a part of the conspiracy that after YEARWOOD delivered cash to ▇▇▇ at the Vienna, Virginia, business address, ▇▇▇ made regular and substantial counter deposits of the victims' funds into the SCT, WC and MT accounts held at Truist Bank in Vienna, Virginia.

28. It was further a part of the conspiracy that on or about the following dates, ▇▇▇ made substantial deposits of funds in excess of $10,000 into the SCT account ending in account number 0734, which funds were stolen from victims:

| Date | Amount |
| --- | --- |
| January 7, 2025 | $129,000.00 |
| January 9, 2025 | $124,800.00 |
| January 10, 2025 | $169,950.00 |
| January 13, 2025 | $414,980.00 |
| January 21, 2025 | $318,740.00 |

29. It was further a part of the conspiracy that to further conceal the nature, source, ownership and control of the victims' funds, ▮ and conspirators made internal transfers of approximately $3.6 million in stolen victim funds between the SCT, MT and WC accounts.

30. It was further a part of the conspiracy that between October 2024 and August 2025, ▮ and conspirators received, via wire or teller deposits into the SCT, MT and WC accounts, approximately $26.4 million in stolen victim funds held in accounts created by conspirators at Bank of America, Wells Fargo, JPMC, U.S. Bank, and other banks, from locations in Charlotte, NC, New York, NY, and elsewhere.

31. It was further a part of the conspiracy that money laundering conspirators created fictitious companies named "Commercial Equipment Sales & Service, LLC", "5 Star Appliance Service, LLC", "Metro Sales & Service, LLC", "Arpaargo General Trading LLC", "True Properties, LLC", "Focus Trading, LLC", "United Trading, LLC", and "DMV Sales & Service, LLC", among others, from which accounts conspirators transferred tens of millions of dollars of stolen victim funds into the SCT, WC or MT accounts.

32. It was further a part of the conspiracy that after the stolen victim funds were deposited into the SCT, WC, or MT accounts, ▮ and conspirators transferred millions of dollars by international wire transfer to banks located in Singapore, Dubai, India, China, Hong Kong, and

elsewhere.

33. It was further a part of the conspiracy that between October 2024 and August 2025, ▮▮▮▮ and conspirators caused millions of dollars in victim funds to be transmitted by international wire transfers from Truist Bank accounts in the names of SCT, MT and WC, to bank accounts held in India, China, and Hong Kong, some of which international transfers are set forth below:

| Date | Amount | Destination Country | Originating Bank Account | Receiving Bank Account |
|---|---|---|---|---|
| January 10, 2025 | $152,298.00 | Singapore | SCT – Truist x0769 | "Zhejiang Okly Industrial Co. Ltd." - Standard Chartered Bank |
| March 4, 2025 | $199,938.00 | Malaysia | SCT - Truist x0769 | "Swastika Intl." – Standard Chartered Bank |
| April 4, 2025 | $84,959.00 | India | MT – Truist x0793 | "SSV TECHNOCRATES" – Bank of India |
| May 16, 2025 | $74,959.99 | Hong Kong | WC – Truist x0823 | "HOLAPRIME LIMITED" – DSB Bank |
| June 6, 2025 | $11,960.00 | China | WC – Truist x0823 | "GUANGZHOU HO AND ME HOUSEWARE CO LTD" – Industrial & Commercial Bank of China |
| June 11, 2025 | $152,000.00 | UAE | MT – Truist x0793 | "Infinity Fortune Trading LLC" – Standard Chartered Bank |

In violation of Title 18, United States Code, Section 1956(h).

## CRIMINAL FORFEITURE ALLEGATIONS

The United States hereby gives notice to the defendant, ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ as charged in Counts One through Five, that upon his conviction of such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which requires any person convicted of such offenses to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses, including but not limited to the following:

## MONEY JUDGEMENT

A sum of money equal to at least $26.4 million in United States currency.

## SPECIFIC PROPERTY

### Financial Accounts

a) All funds contained in Truist Bank accounts in the name of Sunshine Commodity Trading LLC, ending in account numbers 0769; 0734; 0750; 0742;

b) All funds contained in Truist Bank accounts in the name of Modest Trading LLC, ending in account numbers 0793; 0785; 0807;

c) All funds contained in Truist Bank accounts in the name of Worldwide Trading LLC, ending in account numbers 0823; 0866; 0874;

d) All funds contained in PNC Bank accounts in the name of 5 Star Appliance Service, LLC ending in account numbers 5765; 5773; 5781; 5802; 5829;

e) All funds contained in Chase Bank accounts in the name of 5 Star Appliance Service, LLC ending in account numbers 7757; 7765; 7773;

f) All funds contained in Chase Bank accounts in the name of Commercial

Equipment Sales & Service, LLC ending in account numbers 0360; 0378; 0386; 5734; 5826; 5891;

      g)      All funds contained in TD Bank accounts in the name of Commercial Equipment Sales & Service, LLC ending in account numbers 8704; 8712; 8720; 8704; 8712; 8720;

      h)      All funds contained in PNC Bank accounts in the name of Hi-Tech Accessory LLC, account numbers ending in 7563, 7782 and 7803; and

      i)      All funds contained in Bank of America account in the name of Hi-Tech Accessory LLC ending in account number 0692.

The United States hereby gives notice to the defendant, ▓▓▓▓▓▓▓▓▓▓▓▓, ▓▓▓▓▓▓▓▓▓▓," as charged in Count Six, that upon his conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(l), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property, including but not limited to the property set forth above in paragraphs (a) through (i).

If any of the property described above, as a result of any act or omission of the defendants:

    a)    cannot be located upon the exercise of due diligence;

    b)    has been transferred or sold to, or deposited with, a third party;

    c)    has been placed beyond the jurisdiction of the court;

    d)    has been substantially diminished in value; or

    e)    has been commingled with other property which cannot be divided without difficulty,

The United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of such defendant up to the value of the forfeitable property described in these forfeiture allegations.

A True Bill,

_____
FOREPERSON

_____
TROY RIVETTI
Acting United States Attorney
PA ID No. 56816

_____
GREGORY C. MELUCCI
Assistant United States Attorney
PA ID No. 56777